### THE HORNBY CASTLE. *

#### HOWE et al. v. UNITED STATES.

Circuit Court of Appeals, Fifth Circuit. February 13, 1929.

No. 5429.

*Rehearing denied April 6, 1929.

H. C. Hughes, of Galveston, Tex. (Lockhart, Hughes & Lockhart, of Galveston, Tex., and Bigham, Englar & Jones, of New York City, on the brief), for appellants.

H. M. Holden, U. S. Atty., and Howell Ward, Asst. U. S. Atty., both of Houston, Tex.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. The steamships Cody and Hornby Castle collided in the Houston ship channel. Libels were brought to recover for the damage to each ship and to the cargo of the Hornby Castle. The district judge held that the Hornby Castle was solely at fault, and entered a decree against it for all damage sustained by the Cody. The libels for damage to the Hornby Castle and its cargo were dismissed.

The collision occurred at the lower end of a bend in the ship channel. The width of the channel was 180 feet in the bend, and 150 feet in the straight stretches. The Cody was bound upstream, and the Hornby Castle was bound downstream. As the Cody approached the bend, it was overtaking the tug Helen, which was towing two barges alongside. The Cody gave an overtaking signal which entitled it to pass to the right. The tug agreed to the signal and moved the barges over to the left. When the two steamships were a mile apart, they were aware of the fact that they were approaching each other. The Hornby Castle, as it rounded the bend, discovered the tug and barges on the inside of the bend, about a ship's length ahead, and agreed with the tug to pass starboard to starboard, and, as it was maneuvering to carry out this agreement, received and accepted a signal from the Cody, which at that time was about 1,500 feet away, calling for a port to port passage. It soon became apparent to the pilot and master of the Hornby Castle that that ship would not have time to get over to the right side of the channel before it would be run into by the Cody, and, when the ships were about 700 or 800 feet apart, the Hornby Castle gave a distress signal, reversed its engines, and lowered its starboard anchor. The Cody also reversed its engines and low-

ered anchors, but the ships nevertheless came together in a head-on collision. The Hornby Castle was loaded, and had been proceeding on its voyage at a rate of speed not exceeding 5 miles per hour. The Cody was light, and before the collision had been running at an average rate of speed in excess of 10 miles per hour. The two ships were about the same size; the Hornby Castle having a length of 370 feet and a beam of 53.5 feet, and the Cody having a length of 390 feet and a beam of 54.2 feet. The two barges were 300 feet long and 35 feet wide, and the tug was 15 feet wide. There was evidence that the Hornby Castle took a sheer to port as she attempted to swing in behind the barges and take her position on the side of the channel which lay to her starboard.

We are of opinion that the Hornby Castle was at fault. She agreed with the Cody to pass port to port when she was on the outside of the bend, and had not cleared or was just clearing the barges. A slight miscalculation in the speed or the handling of that vessel was likely to result in a collision. If, instead of agreeing to a passage which required crossing the channel before meeting, the Hornby Castle had answered the Cody's signal by a distress signal, the collision probably would not have occurred. Under the circumstances, the Hornby Castle was justified in taking the outside of the bend while passing the tug and barges. At least, the Cody is not in position to complain of that passage, for she requested the tug to place the barges on the inside of the bend so as to enable her to pass, and this was done with full knowledge that the Hornby Castle was coming. A starboard to starboard passage with the tug and barges was practically forced upon the Hornby Castle at the request of the Cody. Therefore the Hornby Castle cannot fairly be held to have violated the narrow channel rule, which requires each vessel to keep to the right of midchannel. The Hornby Castle is to be commended for proceeding at a moderate rate of speed, and is not to be condemned if it be a fact that she took a sheer while attempting to cross to the other side of the channel. The Cody had an unobstructed, close-up view, and full knowledge of the perilous position of the Hornby Castle, and was under the active duty to take every reasonable precaution to avoid a collision which must have appeared to it to be imminent. That vessel seems to have relied too much on the agreement of the Hornby Castle to get out of the way by crossing the channel. In our opinion the Cody was very much at fault in not reducing speed in time to avoid the collision. If it had been operating at a careful rate of speed, it could have stopped after the danger of a collision became apparent to it. It calculated too closely on the movements of the other vessel, and in the situation that confronted it was plainly guilty of negligence. The Aurania and The Republic (D. C.) 29 F. 98, 124; The New York, 175 U. S. 187, 207, 20 S. Ct. 67, 44 L. Ed. 126.

As in our opinion both vessels were at fault, the case presented is one that calls for a division of damages.

The decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.